IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RANDALL MORRIS, ID # 15141-010, Plaintiff, | § § § § | |
| v. | § | No. 3:24-CV-3148-X-BW |
| LAUREN HOWARD, et al., Defendants. | § § § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Verified Complaint (Dkt. No. 3), received on December 13, 2024, and supplemented by the filing received on April 22, 2025. Based on the relevant filings and applicable law, the Court should **DISMISS** the complaint, as supplemented, under 28 U.S.C. § 1915 and § 1915A.

## I. INTRODUCTION

Randall Morris, a federal prisoner currently incarcerated by the Federal Bureau of Prisons ("BOP") at the Federal Correctional Institution, Seagoville ("FCI Seagoville"), filed this civil action against Supervisor of Education ("SOE") Lauren Howard at FCI Seagoville, the warden of FCI Seagoville, and two BOP directors in connection with his conditions of confinement and for constitutional deprivations. (*See id.* at 1.) His "complaint centers on unreasonable, arbitrary, and extreme restrictions regarding the use of the BOP typewriters and the use of the Inmate

[1] By Special Order No. 3-251, this pro se case has been referred to the undersigned magistrate judge for case management. (*See* Dkt. No. 1.)

Trustfund Photocopy Machine." (*Id.*) According to Morris, "[t]hese egregious restrictions conflict with the First Amendment as well as specific BOP Program Statements that authorize all inmates to create, duplicate, and share original literary works[.]" (*Id.*) He states that he "does not seek a monetary award," but he seeks injunctive and declaratory relief, costs, attorney's fees, and "any other appropriate relief." (*Id.* at 1, 9.)

The Court granted Morris's subsequent request to supplement his complaint. (*See* Dkt. Nos. 10, 13.) Morris supplemented his complaint with additional factual allegations to support his original claims, to support a "reasonable accommodation ADA/RA foundation" stemming from the denial of his accommodation requests for unrestricted access to the typewriters and the copy machine to accommodate physical impairments of his writing hand, and to support a claim of retaliation. (Dkt. No. 10 at 2 (capitalization altered); *see also id.* at 2-6.)

## II. PRELIMINARY SCREENING

Morris is a federal prisoner who has been permitted to proceed in forma pauperis ("IFP") in this action. (*See* Dkt. No. 6.) As a prisoner seeking redress from officers of a governmental entity, his complaint is subject to preliminary screening under 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998). Because Morris is proceeding IFP, the complaint also is subject to screening under § 1915(e)(2). Both § 1915A(b) and § 1915(e)(2)(B) provide for sua sponte dismissal of a complaint, or any part of it, if the Court finds it is frivolous or malicious, fails to

state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483-84 (5th Cir. 1991).

In evaluating the sufficiency of a complaint, the Court accepts well-pleaded factual allegations as true, but it does not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold pro se plaintiffs to a more lenient standard when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## III. ANALYSIS

Because Morris seeks relief in this action from federal officers for violation of his constitutional rights, his claims are fairly interpreted as arising under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). *See Montgomery v. Deitelbaum*, No. 3:09-CV-2407-M-BH, 2010 WL 582146, at *2 (N.D.

Tex. Feb. 18, 2010). In the supplement to his complaint, Morris also implicates claims under the Americans with Disabilities Act of 1990, as amended ("ADA"), and the Rehabilitation Act of 1973 ("RA"). (*See* Dkt. No. 10 at 2-4.) Morris does not specify in either his complaint or his supplement whether he is suing Defendants in their official or individual capacities. The Court therefore will address the claims against Defendants in both their official and individual capacities.

**A. *Bivens***

Morris alleges that various policies and restrictions imposed at FCI Seagoville by SOE Howard regarding inmate usage of the BOP typewriters and photocopier violate his First Amendment rights and BOP regulations and Program Statements § 1315.07 and § 5350.27. (*See* Dkt. No. 3 at 1-4, 29-36.) He also appears to allege that SOE Howard has retaliated against him because of personal resentment, literary works Morris has published, his use of the BOP's administrative grievance process, and his filing of this action. (*See id.* at 7; Dkt. No. 10 at 4-5.) Morris states that the other three Defendants—FCI Seagoville's warden, the BOP South Central Regional Director, and the BOP Central Office Director—successively have "superior authority over the actions of subordinates," and as such could have granted his requests for "general inmate use of the typewriters and the Inmate Trustfund Photocopy Machine." (Dkt. No. 3 at 6-7.)

Assuming for purposes of this recommendation that Morris seeks relief in this action that is available under *Bivens* in the first instance, the Court must determine if his claims against Defendants properly arise under *Bivens*. *See Evans v. Ball*, 168 F.3d

856, 863 n.10 (5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials."), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 948-49 (5th Cir. 2003).

**1. Official Capacity**

Claims against federal employees in their official capacities are merely another way of pleading an action against the entity or agency of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). *Bivens* only provides a remedy for victims of constitutional violations by government officers in their individual capacities; it does not provide for a cause of action against a federal agency or the United States. *Affiliated Pro. Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999); *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994). This is because the purpose of a *Bivens* action is to deter a federal officer from violating a person's constitutional rights. *Meyer*, 510 U.S. at 485; *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Accordingly, because any *Bivens* claims against Defendants in their official capacities amount to claims against the BOP, the Court should dismiss such claims with prejudice as frivolous and for failure to state a claim.

**2. Individual Capacity**

In *Bivens*, the United States Supreme Court created a cause of action under the Fourth Amendment where federal agents allegedly "manacled" the plaintiff "in front of his wife and children, and threatened to arrest the entire family"; "searched the

apartment from stem to stern"; and took him to a federal courthouse where he was "interrogated, booked, and subjected to a visual strip search." *Bivens*, 403 U.S. at 389. "Over the next decade, the Supreme Court recognized two other causes of action against federal officers: (1) for gender discrimination against a former congressional staffer in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979); and (2) for a failure to provide an asthmatic prisoner with adequate medical care in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980)." *Bolden v. FBOP*, No. 1:24-CV-00270, 2024 WL 4182123, at *1 (W.D. La. Aug. 13, 2024), *rec. adopted*, 2024 WL 4181793 (W.D. La. Sept. 12, 2024). "Since then, the Supreme Court has not once extended the *Bivens* remedy, and it has declined to do so at least a dozen times." *Id.* (citing *Looper v. Jones*, No. 22-40579, 2023 WL 5814910, at *1 (5th Cir. Sept. 8, 2023)).

As recently as June 30, 2025, the Supreme Court expressly declined to extend *Bivens*. *See Goldey v. Fields*, 606 U.S. 942 (2025). The Supreme Court "has repeatedly emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Id.* at 944 (quoting *Egbert v. Boule*, 596 U.S. 482, 492 (2022)) (cleaned up); *see also Ziglar v. Abassi*, 582 U.S. 120, 135 (2017) (same). "[C]reating a cause of action is a legislative endeavor." *Egbert*, 596 U.S. at 491. "So today, '*Bivens* claims generally are limited to the circumstances' of *Bivens*, *Davis*, and *Carlson*." *Looper*, 2023 WL 5814910, at *1.

"When analyzing a proposed *Bivens* claim, a court must consider: (1) whether the case presents a new context; and (2) if so, whether there are any alternative remedies or special factors indicating that judges are 'at least arguably less equipped than Congress' to create a damages remedy." *Bolden*, 2024 WL 4182123, at *2 (citing *Egbert*, 596 U.S. at 492). A proposed *Bivens* claim is "new" if the case is different in any meaningful way from *Bivens*, *Davis*, or *Carlson*. *See Abbasi*, 582 U.S. at 139. "Virtually everything else is a 'new context'" and the "understanding of a 'new context' is broad . . . because even a modest extension of the *Bivens* trilogy is still an extension." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (citations and internal quotation marks omitted).

Here, Morris's claims of constitutional deprivation under the First Amendment based on the conditions of his confinement as they relate to his access and usage of the typewriters and photocopier at FCI Seagoville and his retaliation claim—which also appears to be premised on First Amendment rights—are a far cry from and differ in meaningful ways from the issues in the three cases recognizing an implied cause of action under *Bivens*. As such, they clearly attempt to present new *Bivens* contexts.[2]

[2] None of the three cases recognizing an implied cause of action under *Bivens* involved any alleged First Amendment deprivations. Notably, the Fifth Circuit has declined to extend *Bivens* to First Amendment retaliation claims, and in so doing, it underscored "the fact that the Supreme Court has not only never recognized a *Bivens* cause of action under the First Amendment, but also once rejected a First Amendment retaliation *Bivens* claim for federal employees." *Watkins v. Three Admin. Remedy Coordinators of BOP*, 998 F.3d 682, 686 (5th Cir. 2021) (internal citations omitted).

Because the claims each arise in a new *Bivens* context, the next step is to determine "whether there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Goldey*, 606 U.S. at 944 (internal quotation marks omitted). The salient "special factor" in this case is whether "there are alternative remedial structures in place [because] that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 596 U.S. at 493 (internal quotation marks omitted). "The existence of such alternative remedial procedures counsels against allowing *Bivens* suits even if such procedures are not as effective as an individual damages remedy." *Goldey*, 606 U.S. at 944-45 (quoting *Egbert*, 596 U.S. at 498) (cleaned up); *see also Oliva*, 973 F.3d at 444 ("[T]he alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would."). The focus of this inquiry "is on the *availability* of an alternative remedy and not ultimate success." *Dudley v. United States*, No. 4:19-CV-317-O, 2020 WL 532338, at *8 n.3 (N.D. Tex. Feb. 3, 2020) (emphasis in original).

The existence of the BOP's Administrative Remedy Program demonstrates that there is an alternative remedial structure in place; to the extent a federal prisoner sustains injuries during incarceration, the Federal Torts Claims Act also provides an avenue to relief. *See* 28 C.F.R. § 542.10(a) (enabling "inmate[s] to seek formal review of an issue relating to any aspect of his/her own confinement."); *Watkins v.*

*Carter*, No. 20-40234, 2021 WL 4533206, at *2 (5th Cir. Oct. 4, 2021) (unpublished). Additionally, "the separation of powers is another special factor weighing against extending *Bivens* because Congress has had the occasion to consider prisoner rights, but has not legislated to extend the reach of *Bivens*." *Bush v. Watson*, No. 1:18-CV-595, 2022 WL 2072227, at *3 (E.D. Tex. Apr. 11, 2022) (citing *Watkins*, 998 F.3d at 685-86); *see also Oliva*, 973 F.3d at 444 ("This 'silence of Congress is relevant' to the special-factors inquiry."). These special factors counsel against the extension of *Bivens* here. *See Watkins*, 2021 WL 4533206, at *2. Because Morris's First Amendment-based claims regarding his conditions of confinement and retaliation present new contexts under *Bivens*, the Court should dismiss them with prejudice.[3]

**B. ADA and RA**

In the supplement to his complaint, Morris asserts factual allegations purporting to support a "Reasonable Accommodation ADA/RA foundation." (Dkt. No. 10 at 2.) Morris states that physical impairments of his writing hand "are a

[3] As the Court has noted, Morris complains that SOE Howard's typewriter and photocopier policies at FCI Seagoville also conflict with BOP regulations and Program Statements § 1315.07 and § 5350.27. (*See* Dkt. No. 3 at 1-4.) To the extent his claims are premised on such alleged violations, independent of his First Amendment allegations, "a failure to follow BOP policies and procedures as set forth in various program statements does not, in and of itself, state a constitutional violation." *Mickle v. O'Connell*, No. 1:22-CV-02498 SEC P, 2023 WL 2534511, at *5 (W.D. La. Feb. 27, 2023) (citing, among others, *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)), *rec. adopted*, 2023 WL 2527969 (W.D. La. Mar. 15, 2023); *see also Hood v. Warden, FCI Beaumont Low*, No. 1:16-CV-400, 2016 WL 7477615, at *2 (E.D. Tex. Nov. 7, 2016) ("A violation of prison regulations, without more, does not constitute a violation of the Constitution."), *rec. adopted*, 2016 WL 7469813 (E.D. Tex. Dec. 28, 2016). Morris therefore fails to state a claim on which relief can be granted, and the Court should dismiss with prejudice any claims premised on the alleged violation of BOP regulations and program statements.

direct source of [his] inability to write by hand," and he alleges that, "[c]omplete or partial, the inability to write by hand substantially limits [his] ability to communicate and/or learn – a major life activity." (*Id.*) He requested "access to the copy machine and typewriters as a 'reasonable accommodation' for [his] disability, earmarking it for the ADA/RA[.]" (*Id.* (emphasis omitted).) Defendants have denied his accommodation requests. (*See id.* at 2-4.) To the extent his supplement and allegations can be liberally construed to allege claims under the ADA and the RA, the undersigned addresses them.

**1. ADA**

The ADA prohibits "discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (footnotes omitted). Because Morris alleges that he is being denied the reasonable accommodation of general or unrestricted "access to the copy machine and typewriters" at FCI Seagoville, any ADA claims appear to implicate Title II of the ADA. (Dkt. No. 10 at 2 (emphasis omitted).) Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The definition of a "public entity" for purposes of the ADA does not include the federal government, however. *See* 42 U.S.C. § 12131(1). Title II of

the ADA therefore does not apply to the federal government, of which the BOP is a part. *See Chamberlain v. Chandler*, 344 F. App'x 911, 913 (5th Cir. 2009) (affirming dismissal of prisoner's "ADA claims against the defendants on the basis that the ADA is not applicable to the federal government.").

As the undersigned has explained, claims against federal employees in their official capacities are claims against the federal entities or agencies of which they are a part, which in this case is the BOP. *See Graham*, 473 U.S. at 165-67. Because Title II of the ADA does not apply to the BOP, of which Defendants are employees, any ADA claims against Defendants in their official capacities are frivolous and fail to state a claim.

The Fifth Circuit also has "recognized that the ADA does not permit public employees to be sued in their individual capacities." *Herndon v. Bureau of Prisons*, No. 4:20-CV-1129-P, 2021 WL 3036950, at *4 (N.D. Tex. July 19, 2021) (citing cases). Accordingly, because the ADA does not provide for relief against individuals, any ADA claims against Defendants in their individual capacities are frivolous and fail to state a claim.

Morris's claims under the ADA against Defendants, to the extent asserted, lack an arguable basis in law and fact. The Court therefore should dismiss any such claims with prejudice.

**2. RA**

Although Morris does not specify any statutory provision of the RA on which he relies in the supplement to his complaint, § 794(a) of the RA "provides that no

qualified individual with a disability shall be excluded from participation in, denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance, or activity conducted by any Executive agency." *Herndon*, 2021 WL 3036950, at *4; *see also* 29 U.S.C. § 794(a). In addition to prohibiting disability-based discrimination, the RA "impose[s] upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020) (citation and internal quotation marks omitted). "An accommodation is reasonable if it does not impose undue financial hardship or administrative burdens or fundamentally alter the nature of the service, program or activity." *Id.* (citations and internal quotation marks omitted). To prevail on a claim under the RA for failure to accommodate, "a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n. 9 (5th Cir. 2015).

Here, as with *Bivens* and the ADA, claims against Defendants in their official capacities under the RA are claims against the BOP. *See Graham*, 473 U.S. at 165-67; *Herndon*, 2021 WL 3036950, at *4. The RA applies to federal agencies, including the BOP. *See, e.g.*, *Pacheco v. Stearns*, No. 1:22-CV-00148-BU, 2025 WL 1675816, at *7 (N.D. Tex. May 22, 2025). That notwithstanding, even if the Court assumes arguendo that the typewriter and copier policies at FCI Seagoville of which Morris

complains qualify as a program or activity for purposes of the RA, and that Morris is a qualified individual with a disability under the RA, he fails to state a claim.

Morris fails to allege any facts or provide any evidence showing that his requested accommodation of unrestricted or general access to the typewriters and copier at FCI Seagoville is reasonable, i.e., "does not impose undue financial hardship or administrative burdens or fundamentally alter the nature of the service, program or activity." *Smith*, 956 F.3d at 317. Even if he had provided such facts and evidence, his pleadings fail to show that he has exhausted his available remedies as to any RA claim against the BOP. Although Morris alleges facts to support potential exhaustion of RA claims through the BOP's administrative grievance process, he has not shown that he has exhausted such claims through the Department of Justice's ("DOJ") administrative process applicable "to all allegations of discrimination on the basis of handicap in programs or activities conducted by [the DOJ]," of which the BOP is a part.[4] 28 C.F.R. § 39.170(a); *see also Chamberlain*, 344 F. App'x at 913 ("The Bureau of Prisons is an agency of the Department of Justice,

[4] Although the Fifth Circuit has not directly addressed the issue, other courts have "reached the same conclusion: The DOJ's administrative process [under 28 C.F.R. § 39170] is an available remedy that applies to federal prisoners who bring claims under the Rehabilitation Act." *Barrett v. Fed. Bureau of Prisons*, No. 19-CV-3250, 2022 WL 93504, at *5 (N.D. Ill. Jan. 10, 2022) (citing cases and stating that it has found no case law concluding the contrary); *see also Williams v. Carvajal*, 63 F.4th 279, 289 (4th Cir. 2023) (agreeing "with the vast majority of courts that find the [Prisoner Litigation Reform Act] PLRA requires exhaustion of both the BOP's ARP and the EEO process for federal inmates alleging violations of the Rehabilitation Act."). The Court finds these authorities persuasive and, absent contrary binding authority, agrees that the PLRA requires exhaustion of the BOP's administrative remedy process and the DOJ's administrative process for disability-based claims by federal inmates under the RA.

which is within the executive branch of the government."). Indeed, Morris's pleadings and exhibits appear to indicate that he has not even initiated the DOJ's administrative process under 28 C.F.R. § 39.170(d). (*See* Dkt. No. 3 at 96-139; Dkt. No. 10 at 2-4.) Based on Morris's deficient allegations and failure to exhaust, the Court should dismiss any RA claims against the BOP, to the extent alleged, without prejudice for failure to state a claim.

To the extent Morris alleges claims under the RA against Defendants in their individual capacities, the Fifth Circuit has recognized that an individual may not be sued in his or her individual capacity under the RA. *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Herndon*, 2021 WL 3036950, at *5. Accordingly, any claims against Defendants in their individual capacities under the RA lack an arguable basis in law or fact, and the Court should dismiss them with prejudice.

## IV. LEAVE TO AMEND

Ordinarily, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). Leave to amend is not necessary, however, when the plaintiff has already pled his best case. *See Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017). When a court "outlines in its opinion the deficiencies of the plaintiff's complaint and the plaintiff nevertheless cannot . . . amend to satisfy the relevant pleading standard, the court can then dismiss the complaint with the assurance that plaintiff has been shown all the deference he is due." *Miller v. United*

*States Gov't*, No. 3:22-CV-2694-M-BH, 2023 WL 5281045, at *4 (N.D. Tex. Aug. 4, 2023) (cleaned up and citations omitted), *rec. adopted*, 2023 WL 5282440 (N.D. Tex. Aug. 15, 2023).

Here, Morris has amended his complaint with a supplement asserting additional factual allegations and claims, and he has filed over 200 pages of exhibits in support of his claims. In light of the bases of dismissal of Morris's claims and based on the most deferential review of Morris's complaint, supplement, and exhibits, it is unlikely that, given the opportunity, Morris can allege viable legal claims against Defendants consistent with the facts of this case. Because it appears Morris has alleged his best case and any amendment would fail to state a claim for the same reasons discussed, the Court concludes that granting leave to amend would be futile and cause needless delay.[5]

## V. RECOMMENDATION

The Court should **DISMISS** the Verified Complaint (Dkt. No. 3), received on December 13, 2024 and supplemented by the filing received on April 22, 2025, under 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) as frivolous and for failure to state a claim upon which relief may be granted. The Court should count this dismissal as a "strike" or "prior occasion" within the meaning of 28 U.S.C. § 1915(g).[6]

---

[5] Even so, the 14-day objection period will permit Morris the opportunity to proffer factual or legal bases, if any, to cure the deficiencies in his claims outlined herein.

[6] Section 1915(g), which is commonly known as the "three-strikes" provision, provides:

**SO RECOMMENDED** on July 15, 2026.

BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

---

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.